[Cite as *Turner v. Univ. of Cincinnati*, 2020-Ohio-248.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Jacob Turner, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 18AP-518 |
| v. | : | (Ct. of Cl. No. 2016-00769JD) |
| University of Cincinnati, | : | (ACCELERATED CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on January 28, 2020

**On brief:** *Barkan Meizlish Handleman Goodin DeRose Wentz, LLP*, and *Sanford A. Meizlish*; *Albeit Weiker, LLP*, and *Leslie A. Albeit*, for appellant. **Argued:** *Sanford A. Meizlish.*

**On brief:** [*Dave Yost*], Attorney General, *Brian M. Kneafsey, Jr.*, and *Peter E. DeMarco*, for appellee. **Argued:** *Brian M. Kneafsey, Jr.*

APPEAL from the Court of Claims of Ohio

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Jacob Turner, appeals a decision of the Court of Claims of Ohio granting summary judgment in favor of defendant-appellee, the University of Cincinnati, on claims arising from injuries he sustained as a passenger in a vehicle crash where the driver was a fellow student of the University. Because neither Turner nor the University filed a claim (or counterclaim) for declaratory judgment and because a "motion for a declaratory judgment" is a nullity, the trial court did not err by refusing to consider a motion for summary judgment and the memorandum in opposition as "motions for declaratory judgment." Construing the evidence most strongly in favor of Turner, we find that the undisputed facts show that the student driver was not an agent of the University

and that the University cannot be nor is liable for the crash through the doctrine of respondeat superior.  We overrule all three assignments of error and affirm.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  On October 19, 2016, Turner sued the University for damages he sustained on October 26, 2014, when a car, in which he was a passenger, crashed.  (Oct. 19, 2016 Compl.; Oct. 27, 2016 Corrected Compl.)  At the time of the crash, according to Turner's deposition testimony, he was a sophomore student at the University and played on the club ultimate frisbee team.  (Turner Dep. at 9, filed Apr. 13, 2018.)  He and his teammates had driven from Cincinnati to Columbus, Ohio on Friday, October 24, 2014, for a frisbee tournament known as the Fall Brawl.  *Id.* at 15-16.  Turner and his friends won the two-day tourney and, after having dinner at Turner's house on Sunday, set out to return to Cincinnati.  *Id.* at 36.  During this drive, near the outskirts of Cincinnati, for reasons not clearly presented in the summary judgment record,[1] the car crashed, seriously injuring all of the occupants, including Turner.  *Id.* at 36-37, 43-44, 52-53.

{¶ 3}  The driver of the car was an 18-year-old student by the name of Austin "Connor" Messmore.  *Id.* at 20.  The vehicle in which Messmore, Turner, and three of their other teammates were riding, was a car owned and insured by Messmore's family; Messmore kept it on campus and used it frequently as a personal vehicle.  *Id.* at 25.  Turner testified the ultimate frisbee club took a number of trips each season to tournaments.  For tournaments in Florida, Rockford, and Pittsburgh, the club rented vans through the University.  *Id.* at 27-30, 35.  To go to California, the club flew.  *Id.* at 28.  He was not aware at the time of the collision, but learned afterwards, that University policy required clubs to procure rental vehicles through the University for trips in excess of 50 miles.  *Id.* at 60.  He was aware that anyone driving such a rental vehicle was, by policy, required to be over 21 years of age.  *Id.* at 63.  Turner stated that student officers of the club were the persons who made rental arrangements for the teams, that such officers went to University meetings about club sports rules from time to time, but that such persons had not informed him of any requirements regarding the use of rental vehicles as opposed to personal vehicles for out-of-town club-related travel.  *Id.* at 30-33, 54.

---

[1] Turner professed to have no recollection of the accident and was only able to recount what Austin Messmore had told him about the crash. (Turner Dep. at 37-39.)

{¶ 4}   Turner agreed that he had received a payout from Messmore's insurance carrier and may have also received medical bill payments through his own health or auto coverage.  *Id.* at 49-52.  However, he related that he did not have underinsured motorist insurance.  *Id.* at 50.  He stated that the basis of his claim against the University was that he thought it should have done a better job of providing reliable school transportation for activities such as club team sports.  *Id.* at 46-47.

{¶ 5}   The only other deponent to offer testimony in the case was Jeffrey Logsdon, the program coordinator for club sports at the University.  (Logsdon Aff. at ¶ 2, filed Apr. 13, 2018; Logsdon Dep. at 7, filed Apr. 13, 2018.)  Logsdon testified that club sports are part of the educational experience for students at the University and that running the clubs, filling out the appropriate paperwork, and arranging their own transportation to club events is also part of the educational process in that it teaches the students to navigate adult logistical tasks.  (Logsdon Dep. at 9, 112-13.)  Logsdon testified that although the ultimate frisbee club had existed in prior years, at the time of the crash, the ultimate frisbee club had not filed the appropriate paperwork to register as an official University club sport for the 2014-15 year.  *Id.* at 19-20, 30-33, 41-42.  The club eventually completed that task, however, after the accident.  *Id.* at 26.  Logsdon explained that even assuming at the time of the accident that the team had been a registered club sport of the University, it would have been required to rent vehicles through the University for travel exceeding 50 miles from the Cincinnati metropolitan area.  *Id.* at 37-39, 48-49; *see also* Club Sport Handbook at 35, Ex. A to Logsdon Aff.  The University, he said, had a contract with Enterprise Rent-A-Car, through which vehicles would be provided to club sports teams with substantially greater insurance coverage than typically carried by individual drivers.  (Logsdon Dep. at 49, 100.)  This policy was communicated to club sports student leaders at a kickoff meeting near the beginning of the 2014-15 school year.  *Id.* at 38-39, 106-09; *see also* Fall 2014 Kick-Off Meeting PowerPoint at 32-40, Ex. 4 to Logsdon Dep.  Logsdon testified that his department had no records with which to verify that any representative of the ultimate frisbee club attended the kickoff meeting.  (Logsdon Dep. at 30-33.)

{¶ 6}   Based on the facts presented in the record, the University moved for summary judgment on April 13, 2018.  (Apr. 13, 2018 Mot. for Summ. Jgmt.)  It argued that the driver, Messmore, was not an agent of the University and that the ultimate frisbee club

had failed to follow university policies that would have provided adequate insurance coverage and prohibited Messmore from driving the team. *Id.* at 2. In addition to the materials discussed above, the University also submitted a copy of its Joint Self-Insurance Pool Automobile Liability Coverage Agreement with an authenticating affidavit. (Apr. 13, 2018 Conlin Aff., Ex. B.) This agreement reflects that coverage would extend to essentially any automobile while any such automobile was "being used in the conduct of" University "business." (Coverage Agreement, Automobile Liability Coverage at 4 of 12.) Covered persons under the policy included:

> **Any permitted user.** Any person or organization to whom you've given permission to use a covered auto you own, rent, lease, hire or borrow is a protected person.

(Emphasis sic.) *Id.* at 6 of 12. The University argued that Turner had not made a claim against its institutional automobile liability coverage and, even if he had, it would not succeed as he was not a covered person in a covered automobile. (Mot. for Summ. Jgmt. at 5-6.)

{¶ 7} Turner responded with a memorandum contra on May 18, 2018, requesting the court "declare that Defendant's Insurance Policy covers his injuries and damages, whereby rendering Defendant's Motion for Summary Judgment moot; or in the alternative, [] request[ing] that Defendant's Motion for Summary Judgment be denied." (May 18, 2018 Memo. Contra at 1.) In other words, Turner argued that the University had filed a motion for a declaratory judgment by asking the court to declare that its insurance policy did not cover Turner and that Turner consequently requested that the court declare that he was covered. *Id.* at 3-4, 6-12. Alternatively, Turner argued that the record shows that Messmore, who allegedly drove negligently while transporting club sport athletes from an athletic contest back to the University was acting as an agent of the University, attributing negligence to the University. *Id.* at 12-14.

{¶ 8} In its decision granting summary judgment to the University, the Court of Claims observed that Turner did not seek declaratory judgment in his complaint and declined to address such arguments or claims. (Decision at 4-5, 11-12.) The Court of Claims concluded that it had jurisdiction to consider the motion for summary judgment before it as a matter of statute, since the University (a State institution) was alleged to be negligent based on the action of its employees, discussing issues of immunity under R.C. 109.36, 9.86,

and 2743.16. (Decision at 6-7.) The Court of Claims concluded that Messmore, as a student who had not been delegated authority to act on the University's behalf, was not an agent of the University for the purposes of establishing liability. *Id.* at 7-10. It therefore granted summary judgment to the University. *Id.* in passim; May 30, 2018 Jgmt. Entry.

{¶ 9} Turner now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 10} Turner presents three assignments of error for review:

> [1.] THE COURT ERRED AS A MATTER OF LAW WHEN IT FAILED TO CONSIDER DEFENDANT-APPELLEE'S MOTION FOR DECLARATORY JUDGMENT, PURSUANT TO SECTION 2721.02(B) OF THE OHIO REVISED CODE, DISGUISED AS A MOTION FOR SUMMARY JUDGMENT, AND HELD THAT IT DID NOT HAVE AUTHORITY TO DECIDE IF MESSMORE WAS A PROTECTED PERSON AND/OR DRIVING A COVERED AUTOMOBILE UNDER THE INSURANCE POLICY.
>
> [2.] THE COURT ERRED AS A MATTER OF LAW BY CONCLUDING THAT MESSMORE WAS NOT AN AGENT OF THE UNIVERSITY.
>
> [3.] THE COURT ERRED AS A MATTER OF LAW BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BECAUSE REASONABLE MINDS COULD DIFFER ON THE ISSUE OF WHETHER MESSMORE WAS AN AGENT UNDER THESE FACTS.

## III. DISCUSSION

### A. First Assignment of Error - Whether the Trial Court Should Have Considered the "Motion for Declaratory Judgment"

{¶ 11} Turner argues that the trial court misconstrued which side moved for declaratory judgment, that it should have considered the motion for summary judgment to be, in substance, a motion for declaratory judgment, that declaratory relief is not precluded by the existence of other adequate remedies, and that the declaratory judgment statutes show that a court must determine a declaratory judgment claim unless there is no real controversy between the parties or the declaration would not terminate the controversy. (Turner's Corrected Brief at 16-23.) These arguments, however, are inapposite to the structure of the complaint and the posture of this case.

{¶ 12} Whether the University's motion for summary judgment is construed as a motion for declaratory relief or whether Turner's memorandum contra is so construed, the point that lies at the center of the trial court's analysis is that no party to this litigation filed a *claim* for a declaratory judgment. The court said:

> We wait for cases to come to us, and when they do we normally decide only questions presented by the parties[.] Turner's corrected complaint does not present a declaratory-judgment claim for the court to adjudicate[.] [W]hen Turner filed his lawsuit in this court he "was aware" of the university's insurance policy, yet Turner did not present a claim for declaratory relief in his corrected complaint[.] Turner has not sought to amend his complaint * * * for the purpose of adding a claim for a declaratory judgment[.] [The University] expressly has moved for a summary judgment * * * regarding a complaint that does not contain a claim for a declaratory judgment.

(Citations and numbering omitted.) (Decision at 4.)

{¶ 13} This is significant because a declaratory judgment can only be brought as a claim, not as a motion.

> Appellant's request for a declaratory judgment cannot be adjudicated because it was not appropriately initiated. Appellant filed a motion for declaratory judgment, but a "motion" for a declaratory judgment is procedurally incorrect and inadequate to invoke the jurisdiction of the court pursuant to R.C. Chapter 2721. The declaratory judgment statutes contemplate a distinct proceeding that a party generally initiates by filing a complaint, not by including the declaratory judgment request in a motion filed in the middle of already existing litigation, as appellant did. Because neither the Civil Rules nor R.C. Chapter 2721 provide for it, the procedure appellant used here is a nullity, and the trial court's decision based upon the nonexistent procedure is reversible error.

(Citations omitted.) *In re J.D.F.*, 10th Dist. No. 07AP-922, 2008-Ohio-2793, ¶ 9; *see also, e.g.*, *Galouzis v. Americoat Painting Co.*, 7th Dist. No. 08-MA-196, 2009-Ohio-204, ¶ 17; *Fuller v. German Motor Sales, Inc.*, 51 Ohio App.3d 101, 103-04 (1st Dist.1988). Thus, the Court of Claims was not permitted to adjudicate the University's motion for summary judgment or Turner's memorandum contra by construing one or both of them as "motions for declaratory judgment."

{¶ 14} The trial court did not err in declining to consider issuing a declaratory judgment when neither party to the action made a claim (or counterclaim) for declaratory judgment. Turner's first assignment of error is overruled.

### B. Second and Third Assignments of Error - Whether Messmore was an Agent of the University

#### 1. Summary Judgment Standard

{¶ 15} Civ.R. 56 provides that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ. R. 56(C). The Supreme Court of Ohio has explained:

> Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 Ohio Op. 3d 466, 364 N.E.2d 267. The burden of showing that no genuine issue of material fact exists falls upon the party who files for summary judgment. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 294, 1996 Ohio 107, 662 N.E.2d 264.

*Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 10; *see also, e.g., Esber Beverage Co. v. Labatt United States Operating Co., L.L.C.*, 138 Ohio St.3d 71, 2013-Ohio-4544, ¶ 9.

{¶ 16} The Supreme Court has also discussed in detail the relative burdens of a summary judgment movant and nonmovant:

> [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving

> party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). In deciding summary judgment, the trial court must give the nonmoving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd* at ¶ 25. When reviewing a trial court's decision on summary judgment, our review is de novo and we therefore apply the same standards as the trial court. *Bonacorsi v. Wheeling & Lake Erie Ry.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 24.

### 2. Whether Messmore was an Agent of the University

{¶ 17} An agency relationship may be express or implied (sometimes called "apparent"). " 'Express authority is that authority which is directly granted to or conferred upon the agent or employee in express terms by the principal, and it extends only to such powers as the principal gives the agent in direct terms; and the express provisions are controlling where the agency is expressly conferred.' " *Cincinnati Golf Mgt. v. Testa*, 132 Ohio St.3d 299, 2012-Ohio-2846, ¶ 24, quoting *Master Consol. Corp. v. BancOhio Natl. Bank*, 61 Ohio St.3d 570, 574 (1991). But even in the absence of express authority, an agency relationship may be implied where "(1) the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and (2) * * * the person dealing with the agent knew of those facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority." *State v. Billingsley*, 133 Ohio St.3d 277, 2012-Ohio-4307, ¶ 26, quoting *Master Consol.* at syllabus.

{¶ 18} When an agency relationship of some sort exists, the Supreme Court has explained how vicarious liability may be imposed:

> "[I]t is a fundamental maxim of law that a person cannot be held liable, other than derivatively, for another's negligence. * * * [T]he most common form of derivative or vicarious liability is that imposed by the law of agency, through the doctrine of respondeat superior." This doctrine of liability

depends on the existence of control by a principal (or master) over an agent (or servant), terms that we have used interchangeably.

(Citations omitted.) *Natl. Union Fire Ins. Co. v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 20, quoting *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 255 (1990), citing *Hanson v. Kynast*, 24 Ohio St.3d 171, 173 (1986).

{¶ 19} Yet, students are not automatically agents of the universities they attend, and universities are not automatically liable for their actions. As the Supreme Court put it:

A university offers a diversified educational experience which includes classroom instruction in a great variety of subjects as well as optional participation in events such as school clubs, and intramural and intercollegiate sports. All of these offerings are designed to expand and enrich a student's overall educational experience. Students evaluate and determine which university best meets their needs, and then pay a fee to attend that university. The relationship formed under these conditions has previously been characterized as contractual. *Zumbrun v. U.C.L.A.* (1972), 25 Cal. App. 3d 1, 10, 101 Cal. Rptr. 499, 502. The student pays a fee and agrees to abide by the university rules. In exchange, the university provides the student with a worthwhile education.

This relationship does not constitute a principal-agent relationship. The student is a buyer of education rather than an agent. Restatement of the Law 2d, Agency (1958) 73, Section 14 J, states that a buyer retains goods primarily for his own benefit, while an agent is one who retains goods primarily for the benefit of the one who delivers those goods. In the instant case, the "goods" to be delivered is an education and the university delivers that education to the student for a fee. It is clear that a student retains the benefit of that education for himself rather than for the university.

*Hanson* at 174. This is not to say that a student who becomes employed by the University (as students sometimes do) cannot become an agent of a university—just that an agency relationship is not created merely by the fact of being a student.

{¶ 20} The critical question in this case is, since Messmore was not an agent of the University by virtue of being one of its students, do the undisputed facts in the summary judgment record nonetheless establish that he either expressly or impliedly became an agent of the University when he drove his teammates from Columbus back to the

University?  Even construing the evidence most strongly in favor of Turner, there can be no genuine dispute that the answer to that question is "no."

{¶ 21}  Neither party contends that the University asked Messmore to drive Turner to and from Columbus or that there was any sort of express agreement between Messmore and the University.   (Corrected Compl. in passim.)   Hence, there is no express agency relationship.

{¶ 22}  As to the question of implied agency, Turner testified he believed Messmore was not an employee of the University and Messmore never claimed to be.  (Turner Dep. at 20.)  In addition, the policies of the University make clear that, for trips of more than 50 miles from the Cincinnati metropolitan area (such as the one taken by Turner and the other members of the ultimate frisbee team), paperwork should have been filed, a rental vehicle with appropriate insurance coverage obtained through the University, and someone older than Messmore (who was age 18) at the wheel.  (Turner Dep. at 60, 63; Logsdon Dep. at 37-39, 48-49, 106-07, 119; Club Sport Handbook at 35; Fall 2014 Kick-Off Meeting PowerPoint at 32-40.)  No agency can be implied when 18-year-old Messmore drove his family's vehicle to transport members of the University's ultimate frisbee club with no evidence of any actions taken to even notify the University that its team members were traveling.  (Turner Dep. at 20, 25-26; Logsdon Dep. at 18, 23-24, 40-45.)

{¶ 23}  Nor did Messmore suggest to Turner that he had been authorized to drive as the University's agent and the record does not reflect that Turner believed that to be the case.  We find no agency relationship to create derivative liability through respondeat superior between Messmore and the University, either express or implied.  Turner's second and third assignments of error are overruled.

## IV.   CONCLUSION

{¶ 24}  Neither party to this case filed a claim (or counterclaim) for declaratory judgment. Because a "motion for a declaratory judgment" is not recognized under the law, the Court of Claims did not err by refusing to consider as related to the University's motion for summary judgment and the memorandum contra to it, as "motions for declaratory judgment." Construing the evidence most strongly in favor of Turner, the nonmoving party, and giving him the benefit of all reasonable inferences, there is no genuine issue of fact as to Messmore's status.  Messmore was merely a student of the University, not its agent, either express or implied.  The University is not liable for any negligence of Messmore in

causing the crash through the doctrine of respondeat superior.  We overrule all three of Turner's assignments of error and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

DORRIAN and LUPER SCHUSTER, JJ., concur.

———————————