[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Brown v. Columbiana Cty. Jail*, Slip Opinion No. 2025-Ohio-5280.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-5280

THE STATE EX REL. BROWN *v.* COLUMBIANA COUNTY JAIL ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Brown v. Columbiana Cty. Jail*, Slip Opinion No. 2025-Ohio-5280.]**

*Mandamus—Public-records requests—Statutory damages—Relator has not shown by clear and convincing evidence that he successfully transmitted his requests by either hand delivery or certified mail or that he authorized another person to act as his agent to submit his requests by email—Relator's request for statutory damages denied—Relator's motion for contempt and sanctions denied because he has not shown that respondents disobeyed or resisted this court's limited writ.*

(No. 2023-1218—Submitted February 11, 2025—Decided November 26, 2025.)

IN MANDAMUS.

ON AMENDED MOTION for Contempt and Sanctions.

_____

DEWINE, J., authored the opinion of the court, which KENNEDY, C.J., and

FISCHER, DETERS, HAWKINS, and SHANAHAN, JJ., joined. BRUNNER, J., concurred in part and dissented in part, with an opinion.

**DEWINE, J.**

{¶ 1} This is an original action involving public records. In a previous decision, we ordered the Corrections Division of the Columbiana County Sheriff's Office and Sheriff Brian McLaughlin (collectively, "the sheriff") to produce certain records to Terry Brown or to certify that such records did not exist. 2024-Ohio-4969, ¶ 24. As part of our order, we directed the sheriff to obtain documents from two nonparties, Correctional Solutions Group, L.L.C. ("CSG") and Community Education Centers, Inc./GEO Group, Inc. ("GEO"), and to provide the records he obtained from CSG and GEO to Brown. *Id.* at ¶ 23. We stated that we would defer our determination of statutory damages until the sheriff complied with the limited writ. *Id.*

{¶ 2} A few weeks after we issued our order, the sheriff filed a notice of compliance with the limited writ. Brown then filed a motion for contempt and sanctions, arguing that the sheriff has defied our limited writ. For the following reasons, we deny Brown's request for statutory damages and his motion for contempt and sanctions.

## I. FACTS AND RELEVANT LAW

{¶ 3} Brown is incarcerated at the Belmont Correctional Institution. In August 2023, he requested from the sheriff numerous records concerning the Columbiana County Jail. Brown asserts that he attempted to submit the requests by hand delivery but was refused. He then tried to send the requests via certified mail to the warden at the Columbiana County Jail, but they were returned to him marked not deliverable as addressed. He ultimately submitted the requests via facsimile. The next day, a third party, Christine Serna, submitted the requests purportedly on Brown's behalf via email.

{¶ 4} The requests at issue can be divided into three categories: (1) records documenting policies on the intake and booking of inmates at the Columbiana County Jail ("policy-records requests"); (2) records regarding personnel employed at the jail between January 1, 2017, and July 1, 2018 ("personnel-records requests"); and (3) records documenting retention policies.

{¶ 5} In response, the sheriff produced two records, declined to provide some records because he had previously given them to Brown, and told Brown that he did not have any other responsive records in his possession. The sheriff explained that he did not have any other responsive records because such records would be kept and maintained by CSG, one of the two private jail administrators that operated the jail during the relevant time period. The sheriff suggested that any request should be made directly to CSG.

{¶ 6} Pursuant to a contract with Columbiana County, CSG began operating the jail in January 2022. GEO, the other private jail administrator, operated the jail between January 2014 and sometime in 2019.

{¶ 7} In most cases, the Public Records Act, R.C. 149.43, does not apply to private entities. *State ex rel. Oriana House, Inc. v. Montgomery*, 2006-Ohio-4854, ¶ 26 ("presumption that private entities are not subject to the Public Records Act"). We have found an exception, however, for certain private entities that are the functional equivalent of a public office. *Id.* at paragraph one of the syllabus. Thus, Brown could have followed the sheriff's advice and requested the documents directly from the private jail administrators. *See State ex rel. Harm Reduction Ohio v. OneOhio Recovery Found.*, 2023-Ohio-1547, ¶ 12 (a functional equivalent of a public office is subject to the Public Records Act). And if they failed to provide him with public records, he could have instituted a lawsuit directly against CSG and GEO. *See id.* at ¶ 34, 42 (granting writ of mandamus ordering functional equivalent of public office to comply with Public Records Act).

**{¶ 8}** Instead of attempting to obtain the documents directly from CSG and GEO, Brown sued the sheriff and the "Columbiana County Jail" in mandamus. We dismissed the claim against the Columbiana County Jail on the basis that it is not a legal entity. 2024-Ohio-4969, ¶ 11-13. Brown did not name CSG or GEO in his lawsuit.

**{¶ 9}** We granted Brown a limited writ. *Id.* at ¶ 24. Because Brown had not sued CSG or GEO, or asked them for any records, our functional-equivalency caselaw did not apply. Thus, we could not order the private jail administrators to respond to Brown's request. Instead, we relied on a more limited quasi-agency theory that recognizes that in certain circumstances, records fall within the jurisdiction of a public entity when they are in the possession of a private entity to which the public entity has delegated a public responsibility. *Id.* at ¶ 17-20; *State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 38-39 (1990).

**{¶ 10}** Under the quasi-agency theory, records held by a private entity fall within the jurisdiction of a public entity if "(1) [the] private entity prepares [the] records in order to carry out a public office's responsibilities, (2) the public office is able to monitor the private entity's performance, and (3) the public office has access to the records for this purpose." *Mazzaro* at 39. Importantly, though, as we applied the test in our previous opinion in this case, we didn't require that the sheriff be able to control the actions of the private entities for the quasi-agency test to be satisfied. Rather, we proceeded on the basis that it was enough that Brown had established that the private jail administrators performed "'a delegated public duty,'" 2024-Ohio-4969 at ¶ 18, quoting *State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 2021-Ohio-1176, ¶ 16. Our limited writ required the sheriff to obtain responsive records from GEO and CSG or to certify that such records do not exist. *Id.* at ¶ 24.

**{¶ 11}** The sheriff promptly acted to comply with our writ, asking CSG and GEO to provide records responsive to Brown's requests. The private jail

administrators responded with the documents that they were able to locate. The sheriff forwarded the private jail administrators' responses to Brown and filed a notice of compliance with our limited writ.

{¶ 12} Brown then filed a motion for contempt and sanctions (which he subsequently amended) asserting that the sheriff has not complied with the limited writ. He also seeks statutory damages. The sheriff filed a response to the amended motion for contempt and sanctions.

## II. ANALYSIS

### A. Brown Is Not Entitled to Statutory Damages

{¶ 13} To be eligible for statutory damages, a public-records requester must demonstrate that he transmitted his request by hand delivery, electronic submission, or certified mail. R.C. 149.43(C)(2).[1] The requester bears the burden to prove by clear and convincing evidence that he is entitled to statutory damages. *State ex rel. Grim v. New Holland*, 2024-Ohio-4822, ¶ 6.

{¶ 14} Brown attests in an affidavit that he attempted to deliver his requests by hand delivery but was refused. But he does not say to whom he attempted to hand-deliver his requests. Nor does he explain how he could have hand-delivered a request to the sheriff when he was incarcerated at the Belmont Correctional Institution. Additionally, although Brown submitted evidence showing that he attempted to mail something via certified mail, the mailing was returned to him as undeliverable. Therefore, Brown has not shown by clear and convincing evidence that he successfully transmitted his requests by either hand delivery or certified mail.

---

1. Effective April 9, 2025, R.C. 149.43 was amended such that a person committed to the custody of the Department of Rehabilitation and Correction is no longer eligible to receive an award of statutory damages under R.C. 149.43(C). 2024 Sub.H.B. No. 265. This opinion applies the version of R.C. 149.43 enacted in 2022 Am.Sub.H.B. No. 45.

{¶ 15} Brown also faxed his public-records requests to the sheriff. But public-records requests delivered by fax do not qualify for statutory damages. *State ex rel. Sultaana v. Mansfield Corr. Inst.*, 2023-Ohio-1177, ¶ 49.

{¶ 16} Lastly, Christine Serna submitted the records requests to the sheriff via email. Serna asserted in an affidavit that she acted "with Power of Attorney and 'Agent Status' for Terry Brown" when she submitted the requests via email. However, Brown has not submitted any documentation showing that he executed a power of attorney authorizing Serna to act on his behalf. Nor does Serna claim to be representing Brown as an attorney licensed to practice law. *See State ex rel. Brinkman v. Toledo City School Dist. Bd. of Edn.*, 2024-Ohio-5063, ¶ 30-31 (the relator was eligible for statutory damages when his attorney submitted public-records requests by email on his behalf).

{¶ 17} We have not previously addressed whether someone is eligible for statutory damages when his nonattorney agent submits a public-records request on his behalf. However, we need not decide that issue today because Brown has not shown by clear and convincing evidence that he authorized Serna to act as his agent. Serna's conclusory statement that she was acting "with Power of Attorney and 'Agent Status' for Terry Brown" is not clear and convincing evidence that Brown executed a power of attorney authorizing her as his agent.

### B. There Is No Basis to Hold the Sheriff in Contempt

{¶ 18} Brown argues that the sheriff should be held in contempt and sanctioned pursuant to R.C. 2705.02(A) for failing to comply with the limited writ. R.C. 2705.02 provides that "[a] person guilty of . . . [d]isobedience of, or resistance to, a lawful writ" may be punished for contempt.

{¶ 19} Brown argues that the sheriff has failed to comply with our limited writ for (1) policy-records requests, (2) personnel-records requests, and (3) the records-retention schedule. We address all three categories separately below.

*1. The sheriff did not disobey or resist our writ as to the policy-records requests*

{¶ 20} Brown argues that the sheriff did not satisfy his policy-records request Nos. 4, 5, 11, and 12. Brown's policy-records requests to the sheriff asked "for public records and policy information relating to **Policy information on Inmate Intake/Booking and Retention of records**." (Boldface, capitalization, and underlining in original.)

{¶ 21} In Brown's policy-records request No. 5, he asked for "[a]ny statistics on how often inmate case files or medical records are lost, stolen, or misplaced." The response that the sheriff forwarded from CSG states, "CSG is not in possession of any statistical data you have requested." Brown seems to argue that such statistics must exist because he was told that a portion of his medical file was misplaced. However, the fact that files may sometimes be misplaced does not demonstrate that the sheriff maintains statistics on lost, stolen, or misplaced records.

{¶ 22} Regarding his policy-records request Nos. 4, 11, and 12, Brown contends that the sheriff improperly denied those requests as overly broad to avoid disclosing the records, in violation of this court's order. Brown's policy-records request Nos. 4, 11, and 12 requested:

4. Policy information on lost, stolen, or misplaced inmates' records including medical records.

11. Policy information on how or when to do drug testing/toxicity testing for inmates showing impairment of drugs, alcohol, or psychological issues.

12. Policy information on ordering/issuing a mental health or psychiatric evaluation for any inmate being booked into the jail suffering from mental or psychological impairment.[2]

{¶ 23} As to these requests, CSG responded: "The request is overly broad. CSG is not able to distinguish the information you are requesting." CSG further invited Brown to "please be more specific in describing the items" he was requesting. It also explained that "state law does not require [CSG] to create information or documents that do not exist." The sheriff forwarded these responses to Brown.

{¶ 24} There is no indication that Brown responded to CSG's request that he be more specific about what he hoped to find. Instead, Brown moved to hold the sheriff in contempt. In response to Brown's contempt motion, the sheriff continues to try to help Brown obtain records that might be responsive to his request. He suggests that "Brown is free to narrow or further explain his request in order to identify any responsive records" and invites Brown "to discuss [with the sheriff] the outstanding records being sought."

{¶ 25} A person may be punished for contempt for "[d]isobedience of, or resistance to, a lawful writ," R.C. 2705.02(A). So for a show-cause order to be proper, there must be some evidence that the sheriff disobeyed or resisted the writ issued by this court. Here, there is nothing in the sheriff's conduct that would lead to such a finding.

---

2. There is a good argument that these requests for policy *information* do not implicate the Public Records Act, R.C. 149.43. The act requires a public office, on request, to make available "public *records* responsive to the request." (Emphasis added.) R.C. 149.43(B)(1). It does not require the public agency to respond to general requests for information. *State ex rel. Morgan v. New Lexington*, 2006-Ohio-6365, ¶ 30 ("Requests for information . . . are improper requests under R.C. 149.43."); *State ex rel. Lanham v. Ohio Adult Parole Auth.*, 1997-Ohio-104, ¶ 7 (request improper because it sought "certain information . . . rather than specific records"). But because the sheriff has not raised such an argument, we do not consider it here.

**{¶ 26}** Start with disobedience. Relevant here, *Webster's* defines disobedience as the "refusal to obey or negligence in obeying a command." *Webster's Third New International Dictionary* (2002). The sheriff wasn't disobedient. We gave him an order, and he sought to carry it out. The sheriff didn't disobey our order, nor did he act negligently in carrying it out.

**{¶ 27}** True, CSG didn't provide records that the sheriff asked it to provide. But any fault for that (doubtful though it may be given the vagueness of the requests) lies with CSG, not the sheriff.

**{¶ 28}** Next, resistance. The sheriff didn't resist our order; again, he sought to carry it out. He asked CSG for the records. He relayed the documents he received to Brown. And for request Nos. 4, 11, and 12, which CSG says it was unable to fulfill because of Brown's vague requests, the sheriff has invited Brown "to rephrase or resubmit those requests with increased specificity."

**{¶ 29}** There is nothing in the sheriff's conduct that demonstrates disobedience or resistance to our limited writ as to the policy-records requests. Thus, there is no basis to hold him in contempt.

   *2. The sheriff did not disobey or resist our writ as to the personnel-records requests*

**{¶ 30}** For similar reasons, we reject Brown's argument that the sheriff should be held in contempt and sanctioned for failure to satisfy personnel-records request Nos. 1, 2, 6, and 7.

**{¶ 31}** In regard to personnel-records request Nos. 1, 6, and 7, GEO—the private jail administrator responsible for the jail during the relevant time—told the sheriff in a letter that it did not have any responsive documents. The sheriff transmitted GEO's letter to Brown. In doing so, the sheriff complied with our limited writ. Therefore, Brown's argument is not well-taken.

**{¶ 32}** In regard to personnel-records request No. 2, GEO provided records to the sheriff and the sheriff sent the records to Brown. However, neither Brown

nor the sheriff filed the records with the court. Brown argues that "respondents" failed to disclose all the responsive records because the names and positions of some temporary GEO employees were omitted. However, we are unable to evaluate this argument because the documents are not in the record. Further, any omission of employee names was presumably the result of actions taken by GEO, not the sheriff. Thus, there is no basis to hold the sheriff in contempt.

*3. The sheriff had already provided the records-retention schedule to Brown*

{¶ 33} Brown argues that he never received a records-retention schedule for the Columbiana County Jail. Brown admits that he had previously received the records-retention schedule for the Columbiana County Sheriff's Office but seems to suggest that there should be a separate schedule for the jail.

{¶ 34} The sheriff responds that he has already provided to Brown the sole records-retention schedule he maintains, which is seven pages long and covers jail records, including the "daily jail activity log." There is nothing in the record that would cause us to doubt the veracity of the sheriff's response.

### III. CONCLUSION

{¶ 35} We deny Brown's request for statutory damages. And because Brown has not shown that the sheriff disobeyed or resisted our limited writ, we deny Brown's motion for contempt and sanctions.

So ordered.

———————————

**BRUNNER, J., concurring in judgment only in part and dissenting in part.**

{¶ 36} I agree with the majority that relator, Terry Brown, cannot establish that respondents, the Corrections Division of the Columbiana County Sheriff's Office and Sheriff Brian McLaughlin (collectively, "the sheriff's office"), failed to comply with our order granting a limited writ of mandamus. I find it unnecessary, however, to revisit why we initially granted the limited writ under a quasi-agency

theory. Brown filed a viable complaint asserting a valid claim for public records. As we noted in our previous decision, "[t]he sheriff's office [did] not dispute that Brown has a clear legal right to the requested records." *State ex rel. Brown v. Columbiana Cty. Jail*, 2024-Ohio-4969, ¶ 16. Instead, the sheriff's office argued that any records beyond those it produced were in the possession of its private jail administrators. The sheriff's office argued that the private jail administrators were the proper parties to respond and could be ordered to do so under the Public Records Act as the functional equivalent of a public office. But Brown had not sued the private jail administrators, and we concluded that "[b]ecause quasi-agency relationships have existed between the sheriff's office and the private jail administrators," the sheriff's office had a duty to obtain the records or certify that no additional responsive records exist. *Id.* at ¶ 2.

{¶ 37} The majority appears to fault Brown for not bringing his mandamus action against the private jail administrators. *See* majority opinion, ¶ 7-8. But private entities and their employees operating in Ohio jail and prison facilities have routinely pushed back against such lawsuits, arguing that they are not required to comply with the Public Records Act. *See, e.g.*, *State ex rel. Ware v. Pierce*, 2024-Ohio-2663, ¶ 11; *State ex rel. Penland v. Aramark*, case No. 2024-0918, Aramark's 8/1/24 motion to dismiss (arguing in part that it was not a public office); *State ex rel. Ellis v. Ohio Dept. of Rehab. & Corr.*, case No. 2024-1491, Trinity Services Group, Inc.'s 11/18/24 motion to dismiss (arguing in part that it was not a public office); *State ex rel. Barr v. Securus Technologies*, case No. 2023-1069, Securus Technologies' 9/22/23 motion to dismiss (arguing in part that it was not a public office). Brown is not required to seek redress directly against the private administrators regardless of whether they are the functional equivalents of a public office.

{¶ 38} The Public Records Act permits a person aggrieved by the failure of a public office or person responsible for public records to make them available to

bring a mandamus action against *either* the public office (in this case, the sheriff's office) *or* the person responsible for the public records (in this case, the private jail administrators). *See State ex rel. Mazzaro v. Ferguson*, 49 Ohio St.3d 37, 39 (1990) (finding that the disjunctive language in R.C. 149.43(C) "manifests an intent to afford access to public records, even when a private entity is responsible for the records"). Brown's mandamus claim against the sheriff's office was successful, so in my view it is unnecessary and overly critical for the majority to reengage in bureaucratic dogma that we have already dispelled. *See Brown*, 2024-Ohio-4969, ¶ 17-23. Brown's decision to file suit against only the sheriff's office is permissible under R.C. 149.43 and our precedent.

{¶ 39} I also respectfully disagree with the majority's decision to deny Brown's request for statutory damages based on its view that Brown was required to establish through documentary proof that he authorized a friend to email the records requests on his behalf. *See* majority opinion at ¶ 16. Brown attested that when his initial attempts to submit his requests by hand delivery and certified mail were refused, the requests were then sent by fax and by email. He attached to his complaint an affidavit of Christine Serna averring that she had emailed two public-records requests for Brown to the sheriff's office. Brown's and Serna's sworn statements are enough to establish that Brown's requests were sent via email, thereby satisfying the delivery conditions in R.C. 149.43(C)(3).

{¶ 40} Our inquiry into whether Brown's requests were delivered in a manner specified by the statute should end there. The sheriff's office did not contest a damages award on those grounds. The majority explains that "[w]e have not previously addressed whether someone is eligible for statutory damages when his nonattorney agent submits a public-records request on his behalf." Majority opinion at ¶ 17. But we have not been asked to address that issue here. And even if this were an issue to consider, written documentation is not required to create agency authority. *See Turner v. Univ. of Cincinnati*, 2020-Ohio-248, ¶ 17 (10th

Dist.) (an agency relationship may be implied).

{¶ 41} Serna and Brown both appear to be laypersons. Regardless of Serna's attempt to use legal terms to explain her relationship to Brown, her affidavit simply states that she had authority to email the documents on Brown's behalf and that she did email them to the sheriff's office. Without referring to any authority, policy, or reason, the majority raises and answers its own illusory and unnecessary inquiry and then concludes that Brown is ineligible to receive damages. I disagree.

{¶ 42} Brown filed this action in September 2023, and he did not receive all the responsive documents until November 7, 2024. The sheriff's office opposed an award of damages only on the grounds that it had initially had a good-faith belief that it did not have to obtain the records from the private jail administrators and that following this court's issuance of the writ, it complied with the court's order and obtained the available records from the private jail administrators. The sheriff's office argues that it acted in good faith when it directed Brown to contact the private jail administrators and that it was under the impression that this conduct did not violate the Public Records Act.

{¶ 43} We may reduce an award of statutory damages if it is shown that "based on the ordinary application of statutory law and case law as it existed at the time of the conduct . . . , a well-informed public office . . . reasonably would believe that the conduct . . . did not constitute a failure to comply with an obligation" of the public office in responding to a public-records request. R.C. 149.43(C)(3)(a).

{¶ 44} The sheriff's office does not cite any case law or other authority that would have supported its belief that it did not have to obtain the records from the private jail administrators to respond to Brown's request. Years before the sheriff's office responded to Brown's request, this court awarded damages in a different public-records case after finding that a public office was required to obtain public records held by a private entity under the quasi-agency theory. *See State ex rel. Armatas v. Plain Twp. Bd. of Trustees*, 2021-Ohio-1176, ¶ 13-16, 25-31, 34.

Therefore, I would find that the sheriff's office lacked a reasonable basis for its initial response and that Brown is entitled to $1,000 in statutory damages. *See* R.C. 149.43(C)(3).

{¶ 45} For the foregoing reasons, I dissent from the majority's judgment denying statutory damages. I concur in judgment only as to the remainer of the majority opinion.

_____

Terry Brown, pro se.

Mazanec, Raskin & Ryder Co., L.P.A., Frank H. Scialdone, and Zachary W. Anderson, for respondents.

_____